Thank you, Your Honor, and I'd please like to reserve five minutes. John Adams on behalf of the appellant, Jimmy Enriquez, and just from a bookkeeping standpoint, does the Court wish me to address, since many of the issues overlap, the Blue Ridge issue, which is technically on the cross-appeal in my rebuttal, or may I address that in my opening remarks? I'd like to address any of the issues in your opening argument. Thank you. I think both sides recognize that there's an inherent conflict in the District Court's judgment, because the District Court found that there was a duty to defend, but no duty to indemnify. That's a pretty rare finding, because as the panel is aware, under the facts of our case, it is permissible, because the way in which Judge Huff found a duty to defend, Your Honor, was because, essentially, she treated the comments by the claims adjuster, Mr. Voss, handling this claim, as if it were a duty to defend.  Thank you, Your Honor. and a supervisor, Ian McGillis, as recognizing that there was a duty to defend. So I think Judge Huff properly considered that to be an admission, but I still think, under Caliph, and the Court could accept that, and still accept that there's no duty to indemnify, but I think the better recourse for the Course would be to also recognize, which Judge Huff didn't take the next step, is if those adjusters who had involvement with the coverage issues recognized a duty to defend, that's because they recognized that there was a potential for coverage. They weren't going to get the answer to that question until there was a trial, either at the State Court level... Why is that? Why didn't they get the answer when the ambulance driver was deposed? Because that was just one side of the story, and the ambulance driver's story could have supported either Mr. Enriquez's version of the events, that this was not a dart-out accident, that his actions may have, in fact, from what he witnessed, contributed to the accident, and as Your Honor is aware, you can't adjudicate the issue of indemnity until the resolution of the trial decides how the accident occurred, if the accident is in dispute. Well, almost. There has to be competent evidence to support your client's theory that there really were concurrent causes. Yes. So what's your best shot? Okay, our best shot is from day one, Mr. Enriquez witnessed, he believed what he saw, that the ambulance driver must have been distracted, he let the insurance company know that right away. Right there, counsel, forgive me for interrupting, but that just sounds very speculative to me about what your client thinks the ambulance driver saw. Well, it's not speculative at all, because in the record, he's got his, he hires his own accident reconstruction expert, because he's concerned that the rain might get rid of the evidence. According to his accident reconstruction investigator, that investigator believed that there must have been a distraction, because from what his measurements indicated, this wasn't a dart-out. So the insurance company The ambulance driver said he thought nothing of it. He saw the fireworks, he saw those folks on the one side of the road and thought nothing of it. Right? Sure. But you've got a plaintiff's counsel on the other side that's very aggressive in the Gomez firm. They're going to try to tap into the ambulance company's $5 million policy as opposed to Mr. Enriquez's $1 million policy. So they had every incentive, and after all, they sued the ambulance company. The insurance company, I'm not aware of any authority, Your Honor, has the power to decide the facts. Only the fact finder can decide the facts. But counsel, I asked you for your best shot, and so I know I'm, but it's just that your time is ticking by. I don't mean to interrupt. Sure. But you went to that, and then you went to the accident investigator. And the accident investigator told Enriquez, Mr. Enriquez, that the ambulance driver must have been, they must have been distracted possibly by us and the boys with their fireworks or their smoke bombs over there. You know, possibly. It really feels like speculation, and I just want to give you every opportunity to tell me what am I missing. Sure. Well, the burden isn't on the insured, Mr. Enriquez, to show a potential for coverage when you're dealing with an exclusion. The burden is on Formos to say, under no conceivable theory, under the Montrose decision, can there be any act that could be potentially covered under the policy. When an insured tells an insurance company, this is what I witnessed, and if you accept that, his version, as did apparently the insurance company, that that gives rise to coverage, then that's for the trier effect to decide. So what we're asking the court to do is have, in the debt relief action, the trier effect, whether it's the judge or a jury, decide how the accident happened. If this is a pure dart out, as apparently Formos believed it did, although I should note, in taking my best shot, that Formos accident reconstruction expert, Mr. Fatzinger, which was different from the gentleman that Mr. Enriquez hired, he testified in the debt relief action when his deposition was taken, that based on his measurements, Mr. Evans, the youthful 10-year-old driver, had easily crossed the road, was heading back towards Mr. Enriquez when the ambulance veered off, which supports Mr. Enriquez's theory because, of course, he's going to point the finger because he wants to try to protect himself had his case not settled. So I don't see how the insurance company can say by no reasonable, by no conceivable theory, could there be any act which could be potentially covered under the policy. And that really can only be determined upon a trial by the fact finder of how the accident occurred. I also wanted to briefly discuss Blue Ridge, and that would be the other way that the court can essentially reconcile the disparity in the judge's ruling. The California Supreme Court in Blue Ridge gave insurance companies a very simple way to preserve a claim for reimbursement of settlement payments. Not only is it easy and simple for insurers to follow, it's easy for their insureds to understand, and it's easy for trial courts to enforce. Strict compliance, as we advocate, a court should follow Blue Ridge under avoids confusion, it gives parties certainty, and it discourages unnecessary litigation. Foremost is asking this court to do what Allstate asked this court to do four years ago in Allstate versus Baglioni, which is kind of give Blue Ridge some wiggle room, maybe not really strictly enforce it under the circumstances, and this court elected not to follow Allstate's lead but to strictly enforce Blue Ridge, and I think appropriately noting that the court's job was to ascertain and apply California law. If Blue Ridge needs tinkering, which I don't believe it does, I even suspect most insurance companies don't want it to be tinkered because it's so easy to follow to preserve their reimbursement claim, that that really needs to come from the California Supreme Court. Now, I know counsel's going to talk about how well Mr. Enriquez is receiving a windfall or he's being unjustly enriched because that's not what he bought under the policy. Well, of course, that assumes that there's no coverage under State Farm versus Partridge, which we believe there is, or at least the potential, after a fact finder determines how the accident occurred. But I would spin it this way. There's two sides of the unjust enrichment coin. Foremost had an obligation to give any insured, including Mr. Enriquez, a choice. When there was a proposed settlement offer, it was intending to accept. It didn't do that, and that's critical for the insured to be able to decide, what am I going to do under the circumstances? Neither choice is necessarily good, but they need to have that choice. You either accept the settlement and defend the coverage action or you refuse the settlement and defend yourself. In this case, they never gave Mr. Enriquez that opportunity, so if anybody is being unduly or unjustly enriched, it would be foremost if they're entitled not to follow Blue Ridge but still receive reimbursement. Now, I know that understandably foremost is going to argue, well, under the facts of our case, Blue Ridge should somehow be relaxed. And beyond the fact that this really isn't the province of this court to do that, but the California Supreme Court, this isn't the case in any event to relax. You know, in Progressive West, where the district court in San Diego relaxed the requirements somewhat, at least it was clear that the insured from day one through their counsel wanted that case to be settled because they knew absolutely it was going to lead to an excess exposure. But we don't have that here. It's not clear in the record at all whether or not this would have been a desirable settlement for Mr. Enriquez. In fact, he filed a declaration in opposing the summary adjudication motion that stated had he known or had he been given advance notice, he would have refused the settlement and defended himself because he felt very strongly he didn't have liability for the accident. Finally, on Blue Ridge, I just wanted to briefly comment that Foremost keeps arguing that Mr. Enriquez demanded that the case settle for the policy limits. There's nothing in the record that supports that. What happened is during a policy limits demand of $999,000, Foremost asked Mr. Enriquez, well, what do you want to do with this? Well, understandably, because one month earlier, Foremost had said we don't know really where the value of this case is quite yet. We're not in a position to accept the policy limits demand. Mr. Enriquez's cumulus counsel, Mr. Ryan, understandably said, we want you to drop the coverage action and resolve the case. No number was given. What Foremost is asking this court to do kind of turns Blue Ridge on its head because it's asking the insurer to make a premature, not only a difficult one, but a premature one. Also, as I understood it, his consent to settlement was conditioned on dropping the coverage action. Correct, which is why there's nothing in the record. That even remotely equates our case with Progressive West where the court knew not only did they demand it, but it was desirable. You're referring to a $999,000 settlement offer, policy limits offer? That's an offer of judgment, isn't it? Yes, and Judge Huff even noted that that wasn't really an intent to accept a proposed settlement offer because if Mr. Enriquez said accept it and if they signed as an authorized, they still weren't telling him they were going to pay it. So there would have been a judgment against them. Unless the court has any questions, I'll reserve my remaining time. You may do so. Thank you. Good morning. Mitch Tilner for the appellee and cross appellant foremost. May I ask the court for clarification? Will I have rebuttal time on my cross appeal? You will, but it will be limited to whatever is talked about concerning the cross appeal, if anything. Thank you, Your Honor. Let me begin with the duty to defend because I'm, first of all, the duty to defend if the court agrees with us, that takes care of the duty to indemnify. Let me ask you, Judge Christin asked what was the best case for Mr. Enriquez and it seemed to me there were additional facts that weren't discussed that may bear on this. Mr. Enriquez in his declaration said that there were smoke bombs and fireworks being set off. There was evidence that the driver had been working basically all weekend and was potentially very tired, which has nothing to do with being on a motorcycle. And one of the boys told the police that the ambulance suddenly veered off and didn't try to stop, which was similar to Mr. Enriquez's observations that he had made. Why isn't that constellation of information enough to allow a jury to conclude that the driver veered off for reasons that had nothing at all to do with the motorcycle? Your Honor, I think the court's going down the wrong track here. The details of the accident are a distraction because as the district court found twice, there was no potential for coverage here, regardless of why the ambulance veered off the road, regardless of whether the 10-year-old boy crossed the road or whether he was driving 30 feet or 20 feet from the road. That's not relevant because the policy excludes coverage for bodily injury arising from a motor vehicle accident. Why isn't it a Partridge case? We know that, Counsel, but why isn't it a Partridge case? Why isn't there no possibility of a concurrent cause? That's what Judge Graber's asking you to address. Thank you, Your Honor. It's not a Partridge case because the alleged antecedent negligence in this case by Mr. Enriquez, failure to supervise, parking the truck too close to the road, by his own theory, that negligence contributed to the auto accident. When you have a so-called concurrent cause that is not separate, that is not independent, that is not unrelated to the excluded peril or excluded cause, then that's not a Partridge case. You're starting with the conclusion that they're entirely separate, and Judge Graber's question was asking you to address why isn't it possible that he veered off because he was sleep-deprived or for reasons that had nothing to do with the fact that the child was on the motorized vehicle that falls within the exclusion. Your Honor, the allegation, we have to focus on the allegation against Mr. Enriquez. The allegation on which Mr. Enriquez claims coverage is that his negligence contributed to this injury. The theory, Mr. Enriquez's theory, is I was negligent in supervising the boys, I was negligent in parking the truck too close to the road, I distracted the ambulance driver. That's his theory of why there's coverage here. The district court correctly rejected that theory twice. The court considered Partridge. Don't we have an obligation to look at it in a broader sense? Because as I understand California law, we have to look at whether it's possible that evidence will be adduced under the complaint that would create coverage. And if a cause of the accident was a tired ambulance driver who fell asleep and suddenly veered off the road, it doesn't matter that the victim was on a motorcycle, on foot, lying in a sleeping bag, riding a donkey, because it wouldn't be arising out of that. It would be arising out of something else. Why isn't that a permissible way to look at this case? Your Honor, regardless of why the ambulance driver veered off the road, the fact remains this bodily injury arose from the use of the motorcycle. How is that possible? What if the boy was standing astride the motorcycle and it wasn't moving? That would still arise out of the use of a motorcycle because they were just out in the desert riding bikes? Your Honor, if he had been riding a bicycle, if he had been walking, if the accident had occurred in some other way. What if he had just parked the motorcycle and was standing but was leaning on it when he got hit? Would that still arise out of the use of a motorcycle? We'd have a different case, Your Honor. Well, we would. We would. Would it arise out of the use of a motorcycle? Well, in this case, the allegation, there's no dispute. That's not an answer to Judge Bybee's question. Your Honor. He asked you a yes or no question whether that scenario would arise out of the use of a motorcycle or not. If the motorcycle was not operating and the ambulance veered off the road, then I don't think it would be said to arise out of the use of a motor vehicle. But the allegation against Mr. Henriquez in this case was you negligently supervised me, and as a result I operated the motorcycle in a way that led to my bodily injuries. That's precisely what the policy was designed to exclude. The policy excluded bodily injury liability arising out of a category of injury, a category of activity, use of a vehicle. Now, the reason why he was using it doesn't really matter. The policy doesn't take that into account. The reason why the accident occurred doesn't really matter. The district court was correct. This is not a Partridge case. In Partridge, the injury was a gunshot wound. The policy excluded vehicle accidents. If the accident was attributable only to the fatigue of the driver, then you would have no liability here, would you? Because Mr. Henriquez would not be liable. He hadn't done anything wrong, right? Then all of the liability would be on the ambulance driver, right? That may be correct. There's a theory here under which the plaintiff was trying to go after two people simultaneously, both an ambulance driver and Mr. Henriquez. He was trying to tap two different policies. So he's got to be able to find liability on both sides. If it's exclusively the fault of the ambulance driver, Mr. Henriquez is not liable, and neither is your insurance company, right? That would be correct, Your Honor. But the issue here is not liability. The issue is coverage. Sure. That's right. But I'm still trying to – but we can work backwards. If you're going to be liable, then you surely are going to defend him. Well, only if there's a potential for coverage for that liability, Your Honor. I understand. Now, Mr. Henriquez might be liable. He might not be liable. But if he is liable, it's because of an auto accident. It's because the child used the motorcycle. If he is liable, that's why. And that is not potentially covered. Yeah. Let's suppose that the boys had been playing with lasers while Evan's child was coming back on the motorcycle and had been pointing the lasers at drivers and pointed the lasers at the driver. Now, is there a possibility that Mr. Henriquez is liable for something other – that doesn't arise out of the use of a motorcycle, even if the Evan's child is on a motorcycle at the time? Let me ask – let me clarify this. You're asking if the boy was riding the motorcycle but using lasers. The other two boys are using lasers. They're off – they're done riding. They're tired. They're done riding, and they're overplaying with these lasers and shining them all around. And that would be funny to point them at drivers coming by, and Mr. Henriquez didn't notice. Your Honor, in that case, there would be no potential for coverage. That's essentially the case that Mr. Henriquez is arguing. He's using smoke bombs. Why is there no coverage? Because the bodily injury arose out of the use of a motorcycle. Now, the lasers may have contributed to that motorcycle accident. Mr. Henriquez argues the smoke bombs contributed to the accident. Mr. Henriquez argues where he parked the truck contributed to the motorcycle accident. That may be true. That's not a Partridge case. That's a case in which his liability arises out of, that is, is connected to, is related to, is incidental to the use of the motorcycle in this case. Now, we can hypothesize other cases where the child may have been injured without using the motorcycle. That would be a different analysis, because the policy talks about injuries arising out of the use of a vehicle or the entrustment of a vehicle or the negligent supervision of a person on a vehicle. So in our case, as the district court twice ruled, the policy creates no potential for coverage here. It's like the court's own opinion in Continental v. Richmond. If the court will recall, in that case, the policy excluded coverage for loss arising out of the death of a person. It was a category of loss that was excluded. The plaintiff's decedent died in police custody. They sued the city. The city sought coverage. The court held, no matter what theory, no matter what theory the plaintiffs allege against the city, they alleged a civil rights violation along with wrongful death. They alleged different legal theories, not different factual occurrences. Those are different legal theories. Correct, different theories, yes. The court said the city's liability, if any, arises from the death of a person. That's an excluded category of loss, no potential for coverage. We have the same case. Mr. Enriquez's liability, if any, perhaps he's not liable. If he is liable, it arises out of the use of the vehicle, in this case, under these facts. In the case of Farmers v. Superior Court, a California case we cite, in that case, a grandmother negligently allowed a 2-year-old child to leave the house. The child was then struck by the grandfather's truck as he pulled in the driveway. The policy excluded loss arising out of the use of a vehicle. The insureds argued, well, the grandmother, her negligence wasn't related to a vehicle. She took her eyes off the child. The child got out of the house. And they argued that- Telling us is what we know, which is that there are lots and lots of folks who have lined up to try to get in under the partridge, what I'll call the partridge exception. Yes. We were asking you for your best shot about why this is not one of them. I just think you're not answering the question. Your Honor- Which is, why isn't there a concurrent cause here? Because we have a completely different factual scenario with what I call the distraction theory. The fireworks, the smoke bombs, and whatnot. And so to Judge Bybee's point, I just want to give you one more chance to answer the question. Yes, Your Honor. If this had happened this way and this boy had been, Mr. Evans, had been standing, a pedestrian by the side of the roadway, what would your answer be? If the child had been standing by the roadway when he was struck by an ambulance, then there might well be coverage. I don't know. I'd have to analyze the case, but the exclusion wouldn't apply. So just take it one more step. If this child wasn't standing by his motocross bike, he was riding it, right? But why doesn't the theory work that the cause of the action, a concurrent cause, was the distraction from the fireworks and the smoke bombs? Because the concurrent cause contributed to a vehicle accident. Unlike in Partridge, the concurrent cause there contributed to a gunshot wound. It didn't cause a vehicle accident. When a so-called concurrent cause... So in Partridge, what the court said is that that gun could have gone off, the one with the hair trigger, could have gone off whether they were in a car or not. And what we're asking you here is to entertain the possibility, and maybe we should just stop, but about whether this child could have been hit by this ambulance, whether he had been riding the motorcycle or not. Yes, he certainly could have been hit had he been walking by the side of the road. So your answer is, and if that had happened, that it still would be an excluded event? No, because that would not arise out of the use of the vehicle. Because then in that case he wouldn't have been on the bike under this hypothetical? Yes. He would not have been operating the vehicle, and it would not arise out of Mr. Enriquez's entrusting the vehicle to the boy. And it would not have arisen out of Mr. Enriquez's negligent supervision of the boy's use of the motorcycle, operation of the motorcycle. But what if the boy had been riding a bike and was struck by a bullet from somebody who was out hunting rabbits in the desert, just missed and knocked him right off the bike with a bullet? Your Honor, I don't think a bicycle would fall within the definition of a recreational vehicle. No, he's riding the motorcycle. He's riding the motorcycle through the desert with the other boys, and somebody's out there hunting rabbits and just misses a shot badly and unfortunately hits him. Now what? I think that's partridge, Your Honor. That's partridge. Even though it still arises out and his injuries may have been aggravated by the fact that he was on a motorcycle? Well, if it didn't arise in partridge, the cause that inflicted the injury was the gunshot. And in your hypothetical, the cause that inflicts the injury is the gunshot. That's not an excluded cause. But you seem to be saying that because this child was on a motorcycle, that there couldn't have been a concurrent cause that doesn't arise out of use of the motorcycle. I'm saying, Your Honor, that any cause that contributed or caused or participated in the vehicle accident is not a partridge concurrent cause. If it's a gunshot wound coming out of the forest, that's different.  Your Honor, I do want to address the group. You're just out of time, but we'll give you a minute for your rebuttal time. You've used up your time. All right. Thank you, Your Honor. I appreciate the court's asking hypotheticals because that's what the California Supreme Court did in partridge when it explained that there were instrumentalities other than the car itself. Obviously, the instrumentality was the hair trigger gun in partridge, but we've got two instrumentalities that have nothing to do with the motorbike itself. We've got the smoke bombs and the fireworks, and we've got the ambulance. Everybody's kind of forgotten about the ambulance, and by that I mean both counsel. The ambulance is not an excluded event. The potential is we somehow distracted the ambulance, which caused the accident. Well, you still have to have a material issue of fact. You still have to have enough evidence that a reasonable juror could look at what's on your side of the scale and say, yep, that could have been a concurrent cause. And the ambulance driver says he paid no attention to the fireworks. What the ambulance driver said, Your Honor, is that he was at the end of his 72-hour shift. Yep. He was the only driver because his partner apparently had lost his ability or his license to drive temporarily. While he did acknowledge they did get some sleep, he normally would take turns with that driver. He didn't have that opportunity. And what he testified to is that he saw the truck, the trailer, and the boys, and Mr. Enriquez, who were within 70, 80 feet of the road, even to the point where he recognized that one of the kids was wearing something that was pink in color. That's before he saw the motorcycle rider. And I think they can't argue by no conceivable theory could that be an issue at trial. So you think it should go to a jury? Yes, Your Honor. Thank you. Thank you. I don't believe the cross-appeal was discussed. We discussed it at its opening, Your Honor. All right. Go ahead. You may discuss only that portion of it. Thank you, Your Honor. That's the Blue Ridge issue. Of course, familiar with the prerequisites that the Blue Ridge Court announced, I would urge the Court to take a careful look at the Progressive West case from the District Court, which was a case very similar to ours in which the insured said, I want you to settle this case for policy limits, and I want you to relinquish your claim to reimbursement. That's exactly what we had here, and the District Court said no, no. You all agreed this case should be settled for policy limits. There was no dispute. Under those circumstances, Blue Ridge requirements are relaxed. There's no need to go through these formalities when everyone agrees the case should be settled for policy limits. Here, of course, they settled it for less than policy limits, $225,000 less. At the time, Mr. Enriquez's cumulus counsel demanded that the case be settled. There was a policy limits offer of settlement on the table. There was an offer of judgment on the table. Yes, Your Honor, an offer of judgment for policy limits. Mr. Enriquez's counsel demanded that the case be settled, foremost complied. It fulfilled its duty of good faith and fair dealing by settling the case well below policy limits. Mr. Bryan, the cumulus counsel said we demand you give up your right to reimbursement under Progressive West and under Blue Ridge. That is not permissible. Thank you. Oh, I'm sorry. Go ahead. Counsel, your October 7th letter, the insurance company's October 7th letter cites to Blue Ridge, but then didn't comply with it. You are out of time, but I just want to give you your best shot at explaining how it is you think your counsel complied with Blue Ridge, particularly the second and third requirements. I believe that letter or the letter before did inform the insured he could assume his own defense if he disagreed with foremost reservation of the right to seek reimbursement. It's true. The letter did not say we are intending to accept a $775,000 settlement offer. It never informed him of that. Never told that. Never informed him of it, did they? No, Your Honor. They found that after the fact. But under Progressive West, when everyone knew the case had to be settled for policy limits or less, then that requirement should be relaxed. It was relaxed in Progressive West. Yes, I'm aware of Progressive West. Thank you. Thank you, Your Honor. Thank you, counsel. The case just argued as submitted, and we appreciate the helpful comments from both counsel.
judges: Graber, Bybee, Christen